13 Cal.Rptr. 839]

[Civ. No. 19633.   First Dist., Div. One.   June 12, 1961.]

WILLIAM ANTHONY AZERIA, Appellant, v. CALIFOR-
NIA ADULT AUTHORITY, Respondent.

William Anthony Azeria, in pro. per., for Appellant.

Stanley Mosk, Attorney General, Arlo Smith and Gerald E. Granberg, Deputy Attorneys General, for Respondent.

DUNIWAY, J.—Appeal from denial of a petition for writ of mandate. The appeal is in propria persona and upon the clerk's transcript alone. So far as appears, no answer to the petition was filed and no evidence was offered or received. There does not seem to have been any appearance below in

opposition to the petition. ██ Under Code of Civil Procedure, section 1088, the writ cannot be granted by default, and, if no answer be filed, the court may hear the case on the papers of the applicant (Code Civ. Proc., § 1094, and *cf.* § 1107). It is thus clear that, in a proper case, the court can act upon the petition in the manner in which it did here. There is some doubt whether mandate is the proper remedy in this case. However, the attorney general has suggested that the appeal can be treated as if it were an original application for habeas corpus. Since either deciding the appeal or treating it as such an application will result in a decision on the merits, we do not decide whether mandate is a proper remedy, and this decision is not to be taken as indicating that we think that mandate is proper.

We consider the appeal on the assumption that the factual allegations of the petition, properly pleaded, are true. This, however, does not apply to the arguments therein, which are voluminous, nor to the many statements of opinions and conclusions, as distinguished from facts.

Petitioner is confined, in the custody of the Adult Authority, following his conviction of manslaughter by motor vehicle (Pen. Code, §§ 192, subd. 3, 193) and failure to stop to render aid after an accident (Veh. Code, § 480, now § 20001). He was sentenced for the same term—six months to five years—for each offense, the sentences being concurrent. He was convicted December 30, 1958. On March 9, 1959, he was notified by the authority as to his status, that the minimum time he must serve was six months, and that the first board appearance would be July 1959. On July 13, 1959, parole was denied and further consideration postponed one year. On July 13, 1960, parole was again denied, and further consideration postponed one year.

He submitted a petition for habeas corpus "to Los Angeles County" and then, about September 30, 1959, to the Superior Court for Kern County. The judge wrote to him asking the basis for the issuance of the writ, and suggesting the appellant consult counsel. In November 1959, the County Clerk of Kern County sent him a certified copy of his petition, stating that he should file in Marin County, because he was then confined to San Quentin prison, where he now is.

On July 22, 1960, appellant addressed a "demand notice" to respondent authority, asking for copies of the minutes of the hearings of his case on July 13, 1959, and July 13, 1960,

and for a statement of its reasons for setting itself up as a judge, failing to comply with its rules of procedure, and failing to comply with a "directive" of the Governor. On August 5, a representative of respondent wrote to appellant, stating that he was entitled to a statement of the action taken in his case (copies of such statement are attached to his petition) and that, if he felt that the requirements of the law were not being met, he could pursue the matter as he felt he should.

In the body of the long and rambling petition, the following facts appear: (1) Petitioner's previous arrest record is being used to compile briefs that are submitted to the Adult Authority; (2) petitioner was transferred from the jurisdiction of the Kern County Superior Court maliciously as a result of filing his petition for habeas corpus; (3) at the July 13, 1959, hearing, member FitzHarris said, "This is *almost* a case of murder"; and "What makes you think you could be a parolee?" to which petitioner replied that he had completed a city parole previously; (4) many other prisoners, whose maximum terms are as long as or longer than petitioner's, have been granted parole, or had their maximum terms reduced, after serving a shorter term than petitioner; (5) petitioner has contracted "dermatisis," for which, after 16 months the doctors "have not yet arrived at a complete diagnosis and/or treatment," and one doctor will testify "that it is his belief that said 'dermatisis' will not completely heal until after petitioner is released from custody." This has kept petitioner from working "most of the time" and he has suffered "pain and discomfort" but his doctor says he will not suffer "lasting or crippling impairment"; (6) petitioner filed a petition for pardon, which was referred to respondent Authority; (7) the Governor has expressed the desire that, where there is a possibility that a petitioner may succeed on parole, he be released; (8) one Harrington, a representative of the Authority, told petitioner that the Authority does not have to keep minutes.

None of these facts, nor all of them together, can entitle appellant to a discharge from custody, or to any other relief against the Authority. ▮▮ The most recent decision of the Supreme Court as to the powers and duties of the Authority is *In re Mills*, 55 Cal.2d 646 [12 Cal.Rptr. 483, 361 P.2d 15]. As there held, petitioner, "has no vested right to serve less than" the maximum term for which he was sentenced (p. 653), here five years. He has no right to have his case

determined in a particular way (p. 653). His sentence is for the maximum until the Authority acts to fix a shorter term, and the Authority may act by considering his case and declining to reduce the maximum (p. 653). The decision of the Authority to postpone further consideration for one year left the maximum term in effect; this is "action" by the Authority. (*People* v. *Harmon,* 54 Cal.2d 9, 16 [351 P.2d 329].)

The Authority could consider his arrest record. (*Cf. In re Harris,* 80 Cal.App.2d 173 [181 P.2d 433].) Mr. FitzHarris' comment was no more than an attempt to impress upon petitioner the gravity of his offense; it certainly does not show that petitioner is being punished for an offense that he did not commit. A major purpose of the indeterminate sentence law is to permit individual treatment of offenders, according to the best judgment of the Authority. It follows that the fact that other prisoners have had their sentences reduced, or been granted parole, affords no ground for complaint by petitioner. (*In re Gough,* 112 Cal.App. 218 [296 P. 658].)

The facts stated above as items (2), (6), (7) and (8) have nothing to do with the propriety of the Authority's actions. Petitioner's transfer to San Quentin did not prevent his filing a petition for habeas corpus, nor is there anything indicating that there was the slightest merit in his petition. The Governor, not the Authority, has discretion as to granting a pardon. On the other hand, the Authority, not the Governor, has discretion in fixing petitioner's term and granting or withholding parole. And what Harrington may have told petitioner has no bearing on the merits of his case. His dermatitis is no ground for his release. He is receiving treatment. One who is lawfully imprisoned may suffer physical ailments, just as do those who are not confined. But if sickness of a prisoner could compel his discharge, which it does not, we could anticipate a veritable rash of petitions.

Many of petitioner's legal arguments have nothing to do with the case before us, and therefore we do not discuss them. The discretion lodged in the Authority is so broad that it is seldom that a case can be made out that would show an abuse of that discretion. (*Cf. Roberts* v. *Duffy,* 167 Cal. 629, 637 *ff.* [140 P. 260]; *In re Harris, supra,* 80 Cal.App.2d 173; *In re Gough, supra,* 112 Cal.App. 218; *In re McLain,* 55 Cal.2d 78 [9 Cal.Rptr. 824, 357 P.2d 1080].) Certainly

6

nothing remotely approaching such a showing has been made here.

Affirmed.

Bray, P. J., and Tobriner, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 9, 1961.